1  Daniel S. Brome, CA State Bar No. 278915
   dbrome@nka.com
2  NICHOLS KASTER, LLP
   235 Montgomery St., Suite 810
3  San Francisco, CA  94104
   Telephone: (415) 277-7235
4  Facsimile: (415) 277-7238

5  Michele R. Fisher, MN State Bar No. 303069*
6  NICHOLS KASTER, PLLP
   fisher@nka.com
7  4700 IDS Center
   80 South 8th Street
8  Minneapolis, MN 55402
   Telephone: (612) 256-3200
9  Facsimile: (612) 218-6170

10
   Charles Scalise, TX State Bar No. 24064521*
11 charles@rosslawpc.com
   ROSS SCALISE LAW GROUP, P.C.
12 1104 San Antonio Street
   Austin, TX 78701
13 Telephone: (510) 270-2614
   Facsimile: (510) 474-5306
14

15 *Admitted *pro hac vice*

16 *Attorneys Plaintiff and Putative Class and Collective Action Members*

17

18              **IN THE UNITED STATES DISTRICT COURT**
                  **NORTHERN DISTRICT OF CALIFORNIA**
19

20 Cody Bowlay-Williams, individually and on        **Case No. 4:21-cv-09942-PJH**
   behalf of others similarly situated,
21                                                   **PLAINTIFF'S NOTICE OF MOTION**
                                      Plaintiff,     **AND UNOPPOSED MOTION FOR**
22                                                   **PRELIMINARY APPROVAL OF**
          v.                                         **SETTLEMENT**
23
   Google, LLC,                                      Date:   February 9, 2023
24                                                   Time:   1:30 p.m.
                                      Defendant.     Judge:  Phyllis J. Hamilton
25                                                           Oakland Courthouse, Courtroom 3
26
                                                     Complaint filed:    December 22, 2021
27                                                   Trial date:         None set
28

─────────────────────────────────────────────────────────────────────

1

### NOTICE OF MOTION AND UNOPPOSED MOTION

**PLEASE TAKE NOTICE** that a hearing will be held on Plaintiff's Unopposed Motion for Preliminary Approval of Settlement on February 9, 2023 at 1:30 p.m. in Courtroom 3, 3rd Floor, of the above-captioned Court, where Plaintiff will move this Court to:  (1) certify the class and collective claims for settlement; (2) preliminarily approve the settlement; (3) designate Plaintiff as the class representative and his Counsel as Class Counsel; (4) designate Atticus Administration as the Administrator; (5) authorize the distribution of the Notices; and (5) schedule a final approval hearing.

The Motion is based on the Notice of Motion and Motion for Preliminary Approval of Settlement and Memorandum of Points and Authorities in support thereof; the declaration of Michele Fisher ("Fisher Decl.") and accompanying exhibits; all other exhibits submitted in support of the Motion; any oral argument of counsel; the complete files, records, and pleadings in the above-captioned matter; and such additional matters as the Court may consider.  A Proposed Order is submitted herewith.

Dated: January 17, 2023

**NICHOLS KASTER, PLLP**

By:      _s/Michele R. Fisher_

Attorneys for Plaintiff and Putative Class and Collective Action Members

1
2

## <u>TABLE OF CONTENTS</u>

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. iii

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 1

   I.   CLAIMS AND DEFENSES AND PROCEDURAL HISTORY ....................................... 1

  II.   OVERVIEW OF MEDIATION AND SETTLEMENT ....................................................... 3

     A.   Data and Information Produced for Mediation ................................................... 3

     B.   Scope of the Settlement Class ............................................................................. 3

     C.   Settlement Amount ............................................................................................. 4

     D.   Settlement Allocations ........................................................................................ 4

     E.   Release ................................................................................................................ 5

     F.   Notice to Class Members .................................................................................... 5

     G.   Final Approval and Check Distribution .............................................................. 6

ARGUMENT ....................................................................................................................... 7

   I.   CLASS AND COLLECTIVE ACTION CERTIFICATION .............................................. 7

     A.   The Court Should Certify the California Class. ................................................... 8

       1.   The Proposed Class Satisfies the Requirements of Rule 23(a). ..................... 8

         i.   Numerosity ............................................................................................. 8

         ii.   Commonality ........................................................................................... 9

         iii.   Typicality ............................................................................................... 9

         iv.   Adequacy ............................................................................................. 10

       2.   The Predominance and Superiority Requirements are Met. ........................ 11

       3.   The Court Should Appoint Class Counsel. .................................................. 12

     A.   The FLSA Collective Should Be Conditionally Certified. ............................... 13

  II.   PRELIMINARY APPROVAL OF THE SETTLEMENT ................................................ 13

     A.   The Proposed Class Action Settlement is Fair, Adequate, and Reasonable. ................ 13

1

      1.   The Settlement is Not Collusive. ................................................................. 13

2        2.   The Settlement has no Obvious Deficiencies. ............................................. 14

3        3.   No Class Member is Given Preferential Treatment in the Settlement. ....................... 14

4        4.   The Settlement Falls Within the Range of Possible Approval. ................................... 14

5    B.   The Settlement Should Be Approved Under the FLSA. ............................................... 16

6    C.   The PAGA Allocation is Reasonable and Should Be Approved. ................................. 17

7   III.   NOTICE TO CLASS MEMBERS ........................................................................................ 17

8   IV.   THE COURT SHOULD PRELIMINARILY APPROVE THE REQUESTED

9   ATTORNEYS' FEES, COSTS, AND SERVICE PAYMENT. ................................................ 18

10    A.   The Court Should Preliminarily Approve the Requested Attorneys' Fees. ................... 19

11       1.   The Percentage of the Benefit Method is Warranted. .................................................... 20

12       2.   The Percentage Requested is Fair and Reasonable. ...................................................... 20

13        i.   The Result Achieved and Similar Awards ............................................................ 21

14        ii.   Class Counsel's Skill and Quality of Work ............................................................ 21

15        iii.  Risk of Litigation and Contingent Fees ................................................................ 22

16    B.   The Court Should Preliminarily Approve the Requested Costs. ................................... 22

17    C.   The Court Should Preliminarily Approve the Named Plaintiff Service Award. ............ 23

18   CONCLUSION ..................................................................................................................... 23

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Adoma v. Univ. of Phx., Inc.,* 913 F. Supp. 2d 964 (E.D. Cal. 2012) ........................................... 21

4

*Anchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................ 10

5

*Arias v. Superior Ct.*, 46 Cal.4th 969 (2009) ................................................ 17

6

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ................................................ 9, 10

7

*Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431 (E.D. Cal. 2013) ................................ passim

8

*Bautista v. Harvest Mgmt. Sub LLC*, 2014 WL 12579822 (C.D. Cal. July 14, 2014).................. 21

9

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)................................................ 18, 19

10

*Boyd v. Bank of Am. Corp.,* 2014 WL 6473804 (C.D. Cal. Nov. 18, 2014)................................ 17

11

*Breeden v. Benchmark Lending Grp., Inc.*, 229 F.R.D 623 (N.D. Cal. 2005) ................................ 8

12

*Campbell v. City of Los Angeles*, 903 F.3d 1090 (9th Cir. 2018) ................................ 16

13

*Castro v. Paragon Indus., Inc.*, 2020 WL 1984240 (E.D. Cal. Apr. 27, 2020) ..................... passim

14

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)................................ 18

15

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992)................................ 8

16

*Collins v. Cargill Meat Sols. Corp.*, 274 F.R.D. 294 (E.D. Cal. 2011) ................................ 8

17

*Cruz v. Sky Chefs, Inc.*, 2014 WL 7247065 (N.D. Cal. Dec. 19, 2014)................................ 17

18

*Deaver v. Compass Bank*, 2015 WL 8526982 (N.D. Cal. Dec. 11, 2015)................................ 8, 22

19

*Flores v. Starwood Hotels & Resorts Worldwide, Inc.*, 253 F. Supp. 3d 1074 (C.D. Cal. 2017).. 17

20

*Foster v. Advantage Sales & Mktg., LLC*, 2019 WL 6699793 (N.D. Cal. Dec. 9, 2019)............. 18

21

*Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007).................... 15, 18, 20

22

*Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553 (2004)........................................... 21

23

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)................................ 9, 10

24

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ................................................ 20

25

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) ........................................... 18

26

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010)................................ 19

27

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F.Supp.2d 1053 (N.D. Cal. 2007) . 9, 11

28

*In re Xcel Energy, Inc., Secs. Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 994

(D. Minn. 2005) ........................................................................................................ 22

*Johnson v. California*, 543 U.S. 499 (2005) ................................................................ 9

*Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ............................. 19

*Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480 (2016) ........................................... 19, 20

*Lealao v. Beneficial Cal., Inc.*, 82 Cal.App.4th 19 (2000) .............................................. 20

*Lusby v. GameStop Inc.*, 2015 WL 1501095 (N.D. Cal. Mar. 31, 2015).................................... 22

*Lynn's Food Stores, Inc.*, 679 F.2d ............................................................... 16, 17

*Ma v. Covidien Holding, Inc.*, 2014 WL 360196 (C.D. Cal. Jan. 31, 2014).................................. 13

*Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468 (E.D. Cal. 2010)....................................... 11

*Nelson v. Avon Prods. Inc.*, 2017 WL 733145 (N.D. Cal. Feb. 24, 2017)............................... 15, 23

*Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324 (N.D. Cal. Aug. 7, 2014)................................. 8, 14

*Nordstrom Comm'n Cases,* 186 Cal.App.4th 576 (2010)..................................................... 17

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ................................... 13

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989) ...................................... 20

*Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000)....................................................... 19, 20

*Satchell v. Fed. Express Corp.*, 2007 WL 1114010 (N.D. Cal. Apr.13, 2007)................................ 13

*Schlieser v. Sunrise Senior Living Mgmt. Inc.*, 2021 WL 6752320 (C.D. Cal. July 6, 2021) ... 9, 11

*Six Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301 (9th Cir.1990) ............................ 19

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003)...................................................... 8

*Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314 (N.D. Ca. 2013)........................................ 8, 13

*Viceral v. Mistras Grp., Inc.*, 2017 WL 661352 (N.D. Cal. Feb. 17, 2017) ................................ 17

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)........................................ 19, 20

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ................................................... 9

*White v. Experian Info. Sols., Inc.*, 2009 WL 10670553 (C.D. Cal. May 7, 2009) ...................... 14

**Statutes**

29 U.S.C. § 201, *et seq.*.................................................................................. 1

**Other Authorities**

28 U.S.C. § 1715(b) ..................................................................................... 7

28 U.S.C. § 1715(d) ........................................................................................................ 7

29 C.F.R. § 778.200(a)(8) ............................................................................................ 15

29 C.F.R. § 778.212 ...................................................................................................... 15

Cal Labor Code § 510 ..................................................................................................... 1

Cal. Bus. & Prof. Code. § 17200 ................................................................................... 1

Cal. Lab. Code. § 2699(l)(2) ........................................................................................ 17

Cal. Labor Code § 226 .................................................................................................... 1

Cal. Labor Code § 2699 .................................................................................................. 1

Cal. Labor Code § 201 .................................................................................................... 1

Cal. Wage Order No. 4 .................................................................................................... 1

29 U.S.C. § 207(e)(8) .................................................................................................... 15

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

<u>**INTRODUCTION**</u>

Cody Bowlay-Williams ("Plaintiff"), on behalf of himself and all others similarly situated, seeks preliminary approval of an $8,369,000.00 class and collective action settlement covering 6,517 individuals who worked for Google, LLC ("Defendant").  The settlement brings an efficient resolution to a case challenging Defendant's failure to include the value of vested restricted stock units ("RSUs") and sign-on bonuses when calculating the rate paid for overtime hours worked, allegedly in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. and California state law, Cal. Wage Order No. 4; Cal Labor Code §§ 510, 1194, 1198; Cal. Labor Code § 226; Cal. Labor Code §§ 201–203; Cal. Bus. & Prof. Code. §§ 17200, *et seq*.; Cal. Labor Code § 2699, *et seq.* ("PAGA").  The settlement provides a substantial value, with participating individuals receiving at least 61% of their alleged miscalculated overtime compensation, after accounting for attorneys' fees and costs, a named plaintiff service payment, payments for the PAGA claims, and a contingency fund.  The parties worked amicably and diligently for over a year since the case was filed, to exchange and analyze data and information to reach a fair resolution, rather than engaging in, and subjecting Class Members to, contentious and lengthy litigation.  This motion is unopposed, and the parties respectfully request that the Court grant preliminary approval so that Notice can be distributed and a hearing for final approval of the settlement can be set.

<u>**BACKGROUND**</u>

I.      **CLAIMS AND DEFENSES AND PROCEDURAL HISTORY**

On December 22, 2021, Plaintiff, on behalf of himself and the proposed California Class and nationwide FLSA Collective (collectively "Class Members"), filed this lawsuit against Defendant for alleged violations of the FLSA and California law, for Defendant's failure to include the value of RSUs and sign-on bonuses in Plaintiffs' overtime rate of pay.  (Compl., ECF No. 1.)

Plaintiff worked as an "Account Manager, SMB, Google Cloud" from approximately May 2019 to August 2021.  (Am. Compl. ¶ 6, ECF No. 47.)  He worked in Defendant's office in Austin, Texas from approximately May 2019 to December 2020 and then from home in California from approximately January 2021 to August 2021.  (*Id.*)  Defendant classified Plaintiff and others

similarly situated as hourly non-exempt employees and provided them with additional compensation such as, in relevant part, RSUs and sign-on bonuses.  (*Id.* ¶¶ 12–13.)

The problem, Plaintiff alleges, is that Defendant did not include the value of RSUs and sign-on bonuses when calculating the rate paid for overtime hours worked.[1]  (*Id.* ¶¶ 14–23.)  Plaintiff asserts that these omissions gave Defendant the benefit of paying hourly workers at a lower overtime rate than required by law.  (*Id.*)  On January 27, 2022, Defendant answered the complaint, denying that federal or state law required it to include the value of RSUs or sign on bonuses when calculating the regular rate.  Defendant further asserted affirmative defenses, including that Plaintiff's complaint failed to state a claim and that Defendant acted in good faith.  (Ans., ECF No. 8.)  In addition to Plaintiff, nine additional Plaintiffs joined the action.  (ECF Nos. 31–1, 32–1, 33–1, 36–1, 37–1, 38–1, 40–1.)

In March 2022, the parties exchanged initial disclosures, and Plaintiff served Defendant with discovery requests.  (Fisher Decl. ¶ 2.)  Plaintiff also served Defendant a notice of deposition pursuant to Federal Rule of Civil Procedure 30(b)(6).  (*Id.*)  In May 2022, the parties agreed to a stay to mediate the case.  (Requests to Stay and Orders, ECF Nos. 29, 30, 34, 35, 39.)  On October 14, 2022, the parties informed the Court that they reached a settlement in principle.  (Jt. Statement Regarding Settlement and Order, ECF Nos. 41, 42).  On November 28, 2022, the parties filed a stipulation allowing Plaintiff to amend the Complaint consistent with the settlement agreement, and also adding a claim for PAGA civil penalties.  (Stip. to Amend Compl., ECF No. 45.)  On November 29, 2022, the Court approved the stipulation and Plaintiff filed the Amended Complaint.  (Order on Stip. to Amend Compl., ECF No. 46; Am. Compl., ECF No. 47.)

---

[1] Plaintiff also alleged individually that Defendant breached its contract with him when it capped his commissions (Compl., ECF No. 1)—a claim which Defendant denied.  The parties separately resolved and dismissed that claim.  (*See* Stip. for Dismissal of Individual Claims, ECF No. 43; Order on Stip. for Dismissal, ECF No. 44.) Plaintiff also initially alleged that Defendant did not incorporate sales bonuses/commissions into the overtime rate for some employees during two quarters. (Compl., ECF No. 1.)  But Plaintiff agreed to drop that claim after Defendant demonstrated that it stemmed from an inadvertent payroll error and, in approximately May 2022, it directly paid the 70 employees it identified as impacted by the issue, and subsequently paid liquidated damages to those same employees in June 2022, for a total of $476,868.18 paid.  (Fisher Decl. ¶ 13.)

**II.      OVERVIEW OF MEDIATION AND SETTLEMENT**

     **A.      Data and Information Produced for Mediation**

Defendant produced data for all Class Members reflecting information such as: dates of employment; hours worked; compensation paid; the issuance, vesting, and value of restricted stock units; and sign-on bonuses. (Fisher Decl. ¶ 3.) Defendant also produced information about its restricted stock option program. (*Id.*) Class Counsel used that data to calculate alleged damages for mediation. (*Id.*) Class Counsel also researched the novel issues that restricted stock options and sign-on bonuses presented and provided the mediator with a lengthy memorandum of legislative history and a detailed legal analysis of their position, which they were prepared to use for a summary judgment filing. (*Id.* ¶ 4.) At mediation, Defendant presented its defenses, including that the statute and legislative history supported the exclusion of restricted stock units from the regular rate of pay, just as other forms of equity compensation are excluded, or alternatively that Google's restricted stock unit grants or sign-on bonuses could be excluded as discretionary bonuses. (*Id.* ¶ 5.) Both sides acknowledged that no case ever had addressed the issue of whether restricted stock units qualify for exclusion of the regular rate. (*Id.*)

While the parties did not settle at mediation, they continued to negotiate with the assistance of mediator Hunter Hughes to ultimately reach a settlement. (*Id.* ¶ 6.)

     **B.      Scope of the Settlement Class**

The parties agreed to certification of the following Classes for settlement purposes:

> **FLSA Collective:** All non-exempt employees of Defendant who worked in the United States, but outside of California, at any time from December 22, 2018 through June 5, 2022, who were awarded restricted stock units that vested at any time during that period and/or who received a sign-on bonus during that period.
>
> **California Class:** All non-exempt employees of Defendant who worked in California at any time from December 22, 2017 through June 5, 2022, who were awarded restricted stock units that vested at any time during that period and/or who received a sign-on bonus during that period.

(Settlement Agmt. ¶¶ 1.D, Q, Ex. 1.)  There are 6,517 Class Members, 3,274 of whom are in the California Class.  (Fisher Decl. ¶ 7.)

### C.      Settlement Amount

The proposed settlement would resolve claims of all Class Members for a maximum settlement amount of $8,369,000.00.   (Settlement Agmt. ¶ III.A, Ex. 1.)   It includes: (1) $6,202,050.00 to Class Members; (2) $50,000.00 for PAGA civil penalties, with $37,500.00 paid to the California Labor and Workforce Development Agency ("LWDA") and $12,500.00 to California Class Members for their share of PAGA penalties during the PAGA period; (3) attorneys' fees of $2,092,250.00 (25% of the maximum settlement amount); (4) litigation costs of up to $16,700.00; (5) a $3,000.00 Plaintiff service payment; and (6) a $5,000.00 contingency fund for any errors or omissions in allocations.  (*Id.* ¶ III.C.)  Defendant will be separately responsible for the cost of settlement administration and employer-side payroll taxes.  (*Id.* ¶¶ III.A, III.D.1.a.)

### D.      Settlement Allocations

The settlement allocations are based on alleged overtime underpayments calculated using Defendant's data for each FLSA Collective Member for a two-year statutory period, and alleged overtime underpayments for California Class Members for a four-year statutory period.  (Fisher Decl. ¶ 8.)  The PAGA eligible California Class Members also received a pro rata share of the $12,500.00 allotted for PAGA penalties.  (*Id.*)  A minimum allocation of $50.00 was applied.  (*Id.*)  For those allocated more than the $50.00 minimum, Plaintiff estimates their allocation represents approximately 61% of their alleged under-calculated overtime pay for the statutory periods included in the settlement. (*Id.*)[2]  For those receiving the $50.00 minimum, they received at least 61% of their alleged under-calculated overtime pay.  (*Id.*)  The average allocation to Class Members is $954.05 and increases to $1,440.53 when the $50.00 minimum allocations are excluded.  (*Id.*)

---

[2] The alleged undercalculated overtime pay for FLSA Collective Members in a two-year statutory period and California Class Members in a four-year statutory period is $10,083,518.00, exclusive of any liquidated damages and penalties.  (Fisher Decl. ¶ 9.)  Plaintiff estimates that including a third year of FLSA damages reserved for willful violations, FLSA liquidated (double damages), and additional potential California penalties, increases Defendant's potential exposure to approximately $30,071,629.  (*Id.*)  However, Defendant contended even if Plaintiff prevailed on the disputed claim for overtime wages, no liquidated damages or penalties could be awarded, based on its defenses.

50% of each Settlement Share will be treated as a payment in settlement of the Class Member's claims for unpaid wages, and will be subject to applicable payroll deductions; Defendant will pay directly its share of required payroll taxes, not to come out of the maximum settlement amount.  (Settlement Agmt. ¶ III.D.1.a, Ex. 1.) The remaining 50% of each Settlement Share will be treated as a payment in settlement of the Class Member's claims for interest, liquidated damages, and penalties, and will not be reduced by payroll tax withholding and deductions; instead, the Settlement Administrator will issue to the Class Member a Form 1099 with respect to the payment of the non-wage portion of each Settlement Shares.  (*Id.* ¶ III.D.1.b.)

**E.     Release**

Provided the judgment becomes final, Class Members who do not opt out of the Settlement and Collective Members who opt in to the Settlement by cashing their settlement checks will release all claims against Google and its related entities, under federal, California, or local law, for overtime due based on not including sign-on bonuses in the regular rate, and overtime due based on not including restricted stock units in the regular rate.  (*Id.* ¶¶ III.G.2–3.)  The release for California Class Members will run from December 22, 2017 (four years prior to the filing of the Complaint) through the date on which the Court grants preliminary approval of the Settlement; the release for FLSA Collective Members will run from December 22, 2018 (three years prior to the filing of the Complaint) through the date on which the Court grants preliminary approval of the Settlement. (*Id.*)

To the extent that FLSA Collective Members (who are part of the opt-in collective settlement class, but not the Rule 23 California Class) do not opt-in to the Settlement by cashing their checks, the Settlement Shares that otherwise would be payable to them will revert back to Google and they will not be bound by the release of claims.  (*Id.* ¶¶ III.F.3.b; III.F.9.)

**F.     Notice to Class Members**

Within 10 days of the Court's preliminary approval of the settlement, Defendant will provide Atticus Administration ("Administrator") with the name, employee ID, last-known address, last-known personal email address (if available), cell phone number (if available), and last-four digits of social security number for each Class Member, and within 14 days of receipt, the

5

Administrator will send Class Members the appropriate Notice.  (*Id.* ¶¶ III.F.2.a-b; *see* Class Notice Exhibits to Settlement Agmt. A–B, Ex. 1.)  The Administrator will send the Notice by mail, and information about the Notice by email.  (Settlement Agmt. ¶ III.F.2.b., Ex. 1.)

The Notice will provide details of the settlement and notify each Class Member of their allocation.  (Exhibits to Settlement Agmt. A–B, Ex. 1.)  For California Class Members, the Notice explains that if they do not request exclusion within 60 days, they will receive a settlement check following the Court's order granting final approval of the settlement and will release their claims regardless of whether they cash it.  (*Id.* Ex. A; Settlement Agmt. ¶ III.E.3.c., Ex. 1.)  The Notice describes how if funds for uncashed checks to California Class Members exceed $60,000.00, they will be distributed pro rata to California Class Members who cashed their checks; if they do not exceed $60,000, they will be donated to charity.  (Exhibit to Settlement Agmt. A, Ex. 1; Settlement Agmt. ¶ III.F.10.)  To the extent any California Class Member requests exclusion, the Notice explains that they will still receive a portion of the PAGA civil penalties and will still release their PAGA claims.  (*Id.* ¶ III.F.3.c.)

For FLSA Collective Members, the Notice informs them that they too will receive a settlement check following final approval and have 90 days to cash it to opt-in to the Settlement.  (*Id.* ¶ III.F.3.b; Exhibit to Settlement Agmt. B, Ex. 1.)  While FLSA Collective Members who do not cash their settlement checks will not be able to participate in the action or settlement, they will not waive any other rights by deciding not to do so.  (*Id.*)  Because uncashed checks will not release the rights of any FLSA Collective Members, the funds from those uncashed checks will be refunded to Defendant.  (Settlement Agmt. ¶ III.F.9, Ex. 1.)

The Notice informs all Class Members that they have a right to object to the settlement.  (*Id.* ¶ III.F.3.a; Exhibits to Settlement Agmt. Ex. A–B.)

### G.    Final Approval and Check Distribution

The parties request that the Court set the final approval hearing for approximately 128 days from the date of any order granting preliminary approval of the settlement.[3]  That will allow for a

---

[3] Plaintiffs arrive at this number as follows: 10 days for Defendant to provide contact information + 14 days for the Administrator to send Notice + 60-day Notice period + additional 30 days (total

60-day notice period to run concurrently with the 90-day Class Action Fairness Act ("CAFA") notice period, plus gives the parties time to submit final approval briefing at least 14 days before the hearing.[4]  Plaintiffs' Counsel will petition the Court for approval of the requested attorneys' fees and costs within 30 days after Notice has been distributed, before the expiration of the 60-day Notice period.

If the Court grants final approval of the settlement, within 60 days, Defendant will deposit the settlement funds with the Administrator and checks will be disbursed within 14 days thereafter. (*Id.* ¶ III.F.8.)  Class Members will have 90 days to cash the checks.  (*Id.* ¶ III.F.10.)

Within 45 days of the expiration of the original check-cashing period, the Administrator will separately identify those who did and did not cash their checks.  (*Id.* ¶ III.F.3.e.)  Within 55 days of the expiration of the original check-cashing period, the parties will file a stipulation for dismissal and request that FLSA Collective Members who cashed their check have their claims dismissed with prejudice and FLSA Collective Members who did not cash their checks be dismissed without prejudice.  (*Id.*)  At that time, they will also seek an order dismissing with prejudice the claims of the California Class Members who did not request exclusion and seek dismissal with prejudice of the California Class Members' PAGA claims regardless of any request for exclusion.  (*Id.*)

## ARGUMENT

## I.   CLASS AND COLLECTIVE ACTION CERTIFICATION

The Court should certify this matter for settlement as a class action under California law and a collective action under the FLSA.  Certification will permit Class Members to receive Notice of the settlement and subsequently be paid if they cash their settlement check.

---

of 90 days) for CAFA Notice, plus 14 days for the parties to provide the Court with final approval briefing and hold the final approval hearing = 128 days.

[4] CAFA provides that, not later than 10 days after a proposed settlement of a class action is filed in court, each defendant must serve upon the appropriate state official of each state in which a class member resides and the appropriate federal official, a notice of the proposed settlement.  28 U.S.C. § 1715(b)(1)–(8).  An order granting final approval of a proposed settlement may be issued after the 90 days expires.  *See* 28 U.S.C. § 1715(d).

**A.      The Court Should Certify the California Class.**

"Judicial policy strongly favors settlement of class actions." *Deaver v. Compass Bank*, 2015 WL 8526982, at *3 (N.D. Cal. Dec. 11, 2015) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)  Federal Rule of Civil Procedure 23(e) requires judicial approval for the compromise of claims brought as a class.  Fed. R. Civ. P. 23(e).  "To obtain class certification, the plaintiff must satisfy the four prerequisites identified in Rule 23(a) as well as one of the three subdivisions of Rule 23(b)." *Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 320 (N.D. Ca. 2013).  "If a court decides to certify a class, it must define the class claims and issues and appoint class counsel." *Castro v. Paragon Indus., Inc.*, 2020 WL 1984240, at *7 (E.D. Cal. Apr. 27, 2020).

*1.      The Proposed Class Satisfies the Requirements of Rule 23(a).*

Where a class action is settled before class certification, the court must "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  In doing so, the court should address the Rule 23(a) requirements: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a); *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1339 (N.D. Cal. Aug. 7, 2014). The California Class satisfies these requirements.

**i.      Numerosity**

Rule 23 requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no absolute numerical threshold. *Breeden v. Benchmark Lending Grp., Inc.*, 229 F.R.D 623, 628 (N.D. Cal. 2005).  Instead, numerosity demands "examination of the specific facts of each case." *Collins v. Cargill Meat Sols. Corp.*, 274 F.R.D. 294, 300 (E.D. Cal. 2011) (quotation omitted).

Here, numerosity is satisfied because joinder of all members of the proposed Rule 23 class is impracticable.  There are 3,276 California Class Members.  Judicial economy is served by resolving the claims through a class settlement.

### ii.      Commonality

Rule 23(a)(2) requires a plaintiff to show there is a question of law or fact common to the class.   Fed. R. Civ. P. 23(a)(2).   In the Ninth Circuit, "Rule 23(a)(2) has been construed permissively.  All questions of fact and law need not be common to satisfy the rule.  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).  Commonality is typically satisfied where plaintiffs challenge "a system-wide practice or policy that affects all the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005). Whether class members were subject to a given compensation policy, and whether that policy was uniformly applied and unlawful are common questions of law and fact that may satisfy Rule 23(a)(2). *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F.Supp.2d 1053, 1062–63 (N.D. Cal. 2007).

Here, Plaintiff alleges he and other non-exempt classified employees were all subject to the same harm by Defendant's common policy.  The class is principally bound by the question of whether Defendant improperly excluded the value of vested RSUs and sign-on bonuses when calculating the overtime rate it paid for overtime hours worked.  Further, Defendant's defense as to all Class Members is the same as it denies that these forms of compensation should have been considered in calculating the overtime rate of pay.  Accordingly, the commonality requirement is satisfied. *Schlieser v. Sunrise Senior Living Mgmt. Inc.*, 2021 WL 6752320, at *8 (C.D. Cal. July 6, 2021) (commonality satisfied in regular rate case based on an alleged "unlawful and uniform policy and practice of failing to include non-discretionary bonuses in employees' regular rate of pay and fail[ing] to pay employees overtime wages at the proper regular rate of pay") (quotation omitted).

### iii.      Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "Under the rule's permissive

standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Typicality is satisfied where the class members' claims arise from the same course of events and class members make similar legal arguments. *Armstrong*, 275 F.3d at 868–69.

Plaintiff's claims are typical of those in the California Class. Plaintiff and the California Class were all subject to Defendant's alleged policy and practice of excluding the value of vested RSUs and sign-on bonuses when determining the regular rate for purposes of calculating overtime pay. Plaintiff's claims are thus co-extensive with those of the California Class Members because Plaintiff and the California Class allege they "were all Defendant's employees, working under the same pay practices and the same company-wide employment policies." *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 442 (E.D. Cal. 2013).

### iv.   **Adequacy**

Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy factor requires: (1) that the proposed representative Plaintiff does not have conflicts of interest with the proposed class and (2) that Plaintiff and competent counsel will vigorously prosecute the action. *Hanlon*, 150 F.3d at 1020–21; Fed R. Civ. P. 23(a)(4).

Plaintiff is an adequate representative, not only because he is covered by the class definition, but also because he has diligently participated by bringing the alleged violations to the Court through his Complaint, assisting Class Counsel in understanding the facts of the case and the alleged violations, helping to prepare for and attending mediation, reviewing settlement documents, and discussing case strategy and developments with Class Counsel. Further, the interests of Plaintiff and Class Members do not diverge. Plaintiff's interests, just as other members of the class, are to establish that Defendant violated California law by failing to include vested RSUs and sign-on bonuses when determining the overtime rate of pay. Additionally, there are no conflicts of interest within the proposed settlement that would pit Plaintiff against the class members. Plaintiff is "part of the class and possess the same interest[s] and suffer[ed] the same injur[ies] as the class members." *Anchem Products, Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997) (quotation omitted).

Further, Plaintiff has retained experienced counsel.  Nichols Kaster, PLLP has been in existence for nearly fifty years and is focused on advocating for employee and consumer rights. (Nichols Kaster, PLLP Firm Resume, Ex. 3; Fisher Decl. ¶ 10.) Nichols Kaster, PLLP is highly qualified and experienced in litigating wage and hour class actions.  (*Id.*)  The firm's lead counsel, Michele Fisher, is well known for dedicating over 22 years to representing workers in class and collective wage and hour actions across the country.  (*See* Fisher Decl. ¶ 10; Nichols Kaster, PLLP, www.nka.com/our-people/michele-r-fisher.html (last visited January 5, 2023); Fisher Resume, Ex. 4; Nichols Kaster, PLLP Firm Resume, Ex. 3.)  Similarly, Ross Scalise Law Group is a well-respected employee rights firm, established in 1998, that represents workers in overtime actions. (*See* Ross Scalise Law Group, www.rosslawgroup.com (last visited January 5, 2023).)

Additionally, the vigorous prosecution of this case through the exchange and analysis of necessary data and information to reach a fair and reasonable resolution supports an adequacy finding.  The Court may conclude "that plaintiff's counsel has vigorously sought to maximize the return on its labor and to vindicate the injuries of the entire class."  *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 476 (E.D. Cal. 2010).

### 2.       The Predominance and Superiority Requirements are Met.

In addition to satisfying the Rule 23(a) requirements, the proposed classes "must also meet at least one of the requirements of Rule 23(b)."  *Barbosa*, 279 F.R.D. at 443.  The Rule 23(b) requirements, known as predominance and superiority, focus on the relationship between the common and individual issues.  *See* Fed. R. Civ. P. 23(b).  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  *In re Wells Fargo Home Mortg.*, 527 F. Supp. 2d at 1065 (quotation omitted).

Here, as noted above, Plaintiff's theory is that one common issue binds the proposed class—whether Defendant improperly excluded the value of vested RSUs and sign-on bonuses when calculating the overtime rate to be paid for overtime hours worked.  It is a significant aspect of the case sufficient to find that common issues predominate over individual issues and supports

1   certification of the settlement class. *Schlieser*, 2021 WL 6752320, at \*10–11 (predominance

2   satisfied in regular rate settlement).

3         Likewise, class-wide relief is the superior method of adjudicating this controversy. "Where

4   classwide litigation of common issues will reduce litigation costs and promote greater efficiency,

5   a class action may be the superior method for managing litigation if no realistic alternative exists."

6   *Barbosa*, 297 F.R.D. at 445 (quotation omitted). Where, as here, a class settlement provides

7   compensation to a group, whose individual damages are modest, the superiority requirement is

8   satisfied. *Id.* at 444–45. This settlement provides fair and reasonable monetary relief for Class

9   Members of a disputed issue and Class Counsel is not aware of any putative class members who

10   have expressed an interest in individually pursuing these claims against Defendant. (Fisher Decl.

11   ¶ 11.) And, Class Counsel is not aware of any other lawsuits, either individual or as a class,

12   concerning the claims at issue. (*Id.*) Finally, it would be inefficient and uneconomical to abandon

13   this settlement and force class members to litigate their identical cases individually.

14         **3.**      **The Court Should Appoint Class Counsel.**

15         Generally, a court that certifies a class must appoint class counsel. *See* Fed. R. Civ. P.

16   23(g)(1)(A). Rule 23(g) lists the following factors for consideration: (1) the work counsel has

17   done in identifying or investigating or potential claims in the action; (2) counsel's experience in

18   handling class actions, other complex litigation, and claims of the type asserted in the action; (3)

19   counsel's knowledge of the applicable law; and (4) the resources counsel will commit to

20   representing the class. *Id.* The court may also consider any other matter pertinent to counsel's

21   ability to fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(1)(B).

22         Class Counsel has actively and diligently prosecuted this action by identifying, researching,

23   and bringing the claims, conferring with Plaintiff to understand the claims, performing a detailed

24   damages analysis, preparing for mediation, and negotiating a fair and reasonable settlement.

25   Additionally, Class Counsel will diligently pursue Court approval of the settlement and continue to

26   assist Class Members during the Notice period by answering their questions and being involved in

27   ensuring settlement administration is handled appropriately. Further, as discussed above, Class

28

1  Counsel has substantial experience in wage and hour class and collective action litigation.  As such,

2  the Court should appoint Nichols Kaster, PLLP and Ross Scalise Law Group as Class Counsel.

3  **A.      The FLSA Collective Should Be Conditionally Certified.**

4  The FLSA Collective is bound by the common question of whether Defendant should have

5  included the value of vested RSUs and sign-on bonuses in the overtime rate, this warrants

6  conditional certification.  *Castro*, 2020 WL 1984240, at *11 (certifying, for settlement purposes,

7  collective consisting of "current or former hourly, non-exempt employees" who claimed to have

8  "suffered injury as a result of Defendant's uniform policies, practices, and procedures").  As such,

9  and given that the standard for FLSA conditional certification is less rigorous than the Rule 23

10  standard for class action certification, for the same reasons detailed above, this case is appropriate

11  for FLSA conditional certification.  *Tijero*, 301 F.R.D. at 323.  This Court should conditionally

12  certify the case pursuant to the FLSA.

13  **II.      PRELIMINARY APPROVAL OF THE SETTLEMENT**

14  **A.      The Proposed Class Action Settlement is Fair, Adequate, and Reasonable.**

15  Rule 23(e) requires judicial approval for the compromise of claims brought on a class basis.

16  Fed. R. Civ. P. 23(e).  In deciding whether to approve a proposed class action settlement, the Court

17  must determine whether a proposed settlement is "fair, adequate and reasonable." *Officers for*

18  *Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Ma v. Covidien Holding, Inc.*,

19  2014 WL 360196, at *3 (C.D. Cal. Jan. 31, 2014); *see also* Fed. R. Civ. P. 23(e)(1)(C).  At the

20  preliminary approval stage, the court may grant preliminary approval of the settlement and direct

21  notice to the class if the settlement:  (1) appears to be the product of serious, informed, non-collusive

22  negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment

23  to class representatives or segments of the class; and (4) falls within the range of possible approval.

24  *Tijero*, 301 F.R.D. at 324.

25  *1.      The Settlement is Not Collusive.*

26  This matter settled after mediation with an experienced mediator, followed by continued

27  negotiations, with both sides represented by experienced counsel.   The proposed settlement is the

28  product of arm's-length negotiations.  *See Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at

*4 (N.D. Cal. Apr.13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").  The Court should find that this settlement is an arms'-length deal among capable counsel experienced in similar litigation, and therefore entitled to a presumption of fairness.  *See White v. Experian Info. Sols., Inc.*, 2009 WL 10670553, at *13 (C.D. Cal. May 7, 2009).

### 2.      The Settlement has no Obvious Deficiencies.

Defendant has committed to a maximum payment of $8,369,000.00, with a total of $6,217,550.00 allocated to Class Members.[5]  That amount is a substantial recovery—with Class Members receiving at least 61% of their alleged miscalculated overtime pay—overtime pay Defendant contends they were not owed.  Further, the release is limited to overtime and related wage and hour claims and is limited in duration.  *See Nen Thio*, 14 F. Supp. 3d at 1334 (settlement did not have obvious deficiencies where release was acceptable because the claims were limited to those based on the facts set forth in the amended complaint).

### 3.      No Class Member is Given Preferential Treatment in the Settlement.

All Class Members are treated the same.  Class Counsel calculated each person's alleged underpaid overtime using the same formula, considering their individual time, pay, and RSU vesting data.  While the settlement provides an incentive award to Plaintiff, that award does not render the settlement unfair, as the Ninth Circuit has recognized that "service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable." *Nen Thio*, 14 F. Supp. 3d at 1335 (quotation omitted).  Similarly, an additional payment to those for the PAGA period does not defy reason.

### 4.      The Settlement Falls Within the Range of Possible Approval.

"To evaluate the range of possible approval criterion, which focuses on substantiative fairness and adequacy, courts primarily consider plaintiff's expected recovery balanced against the value of the settlement offer." *Id.* at 1335.  In doing so, the court may preview the factors that ultimately inform final approval such as:  (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status

---

[5] This amount includes the $12,500.00 employee portion for the PAGA penalty and the $3,000.00 service payment.

throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Id.* As part of its assessment, courts compare the value of the settlement against the expected recovery at trial, "by estimating the maximum amount of damages recoverable in a successful litigation and compar[ing] that with the settlement amount." *Id.* (quotation omitted).

Absent settlement, Plaintiffs would have to succeed in proving that Defendant erred by not including the value of vested RSUs and sign-on bonuses in the overtime rate paid to Class Members for overtime hours worked.  Defendant vigorously disputed the claims.  Additionally, the claims asserted are novel and Class Counsel has been unable to find case law directly addressing them. (Fisher Decl. ¶ 4.)  Further, the FLSA and DOL guidance indicate that the value of stock options and certain sign-on bonuses are properly excluded from the overtime rate of pay.  *See, e.g.*, 29 U.S.C. § 207(e)(8); 29 C.F.R. § 778.200(a)(8); Regular Rate Under the Fair Labor Standards Act, 84 Fed. Reg. 68,736 at 68750-51; 29 C.F.R. § 778.212.  While Plaintiff researched and provided the mediator with a detailed analysis of why his theory has merit, there was risk in proceeding and no certainty he would prevail.

Moreover, even if Plaintiff prevailed, he would have to prove that this error was willful to obtain a third year of FLSA damages, and Defendant could potentially avoid FLSA liquidated (double) damages by demonstrating it acted in good faith.  Defendant vigorously contested liability and asserted affirmative defenses. Indeed, the settlement provides an easy process where Class Members will receive at least 61% of their alleged undercalculated overtime pay (FLSA Collective Members under a two-year statutory period and California Class Members under four years), when a victory was not certain. *See Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (approving where settlement constituted approximately 25% to 35% of damages plaintiffs could have hoped to prove at trial).

Moreover, the parties reached the settlement after experienced counsel exchanged information and data necessary to evaluate the claims, perform a detailed damages analysis, and reach a settlement. *See Nelson v. Avon Prods. Inc.*, 2017 WL 733145, at *4 (N.D. Cal. Feb. 24,

2017) (noting that formal discovery is not required and finding class counsel was "in a strong position to evaluate their case and conclude that settlement was the best way forward" where counsel had "obtained Avon's payroll information for a portion of the Class").  If litigation had proceeded, the parties would have incurred additional costs, including that of discovery and depositions, certification motions, summary judgment and decertification motions, preparing for and attending trial, and handling any subsequent appeals.  Under the proposed settlement, Class Members can recover money now rather than waiting for prolonged litigation to conclude.  *See generally Campbell v. City of Los Angeles*, 903 F.3d 1090, 1102, 1120–21 (9th Cir. 2018) (lengthy procedural history).  This settlement, which avoids the expense and uncertainty of further litigation, makes sense to experienced counsel, was approved by the class representative, and should be approved.

**B.      The Settlement Should Be Approved Under the FLSA.**

Although the Ninth Circuit has not established criteria to evaluate FLSA settlements, courts in the Ninth Circuit routinely apply the standard employed in the Eleventh Circuit, which examines whether a settlement is a fair and reasonable resolution of a bona fide dispute.  *Castro*, 2020 WL 1984240, at *6); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982).  Court approval is favored "to promote the policy of encouraging settlement of litigation," where the settlement reflects a "reasonable compromise over issues" that are "actually in dispute." *Lynn's Food Stores, Inc.*, 679 F.2d at 1354.  "A bona fide dispute between the parties exists when there are legitimate questions about the existence and extent of defendant's FLSA liability." *Castro*, 2020 WL 1984240, at *6 (quotation omitted).  "If a bona fide dispute between the parties exists, [c]ourts often apply the Rule 23 factors in evaluating the fairness of an FLSA settlement, while recognizing that some do not apply because of the inherent differences between class actions and FLSA actions." *Id.* (quotation omitted).  In determining whether to approve an FLSA settlement, courts in the Ninth Circuit have adopted a totality of the circumstances approach that emphasizes the context of the case, and a district court must ultimately be satisfied that the settlement's overall effect is to vindicate, rather than frustrate, the purposes of the FLSA.  *Id.* at *7.

The settlement here is fair and reasonable under the FLSA for similar reasons as it is in the class-action context and should be approved.  Plaintiff claims that Defendant failed to pay the proper overtime rate of pay.  Defendant denies the allegations.  Although both parties firmly believe in the merits of their claims and defenses, given the time and expense associated with further litigation, the parties reached a settlement they believe to be fair and reasonable.  *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 ("Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching.").

**C.    The PAGA Allocation is Reasonable and Should Be Approved.**

The PAGA portion of a settlement must be approved by the court.  Cal. Lab. Code. § 2699(l)(2).  Neither the Act nor state law squarely address the standard of review.  *See Flores v. Starwood Hotels & Resorts Worldwide, Inc.*, 253 F. Supp. 3d 1074, 1075 (C.D. Cal. 2017).  "[C]lass action requirements . . . need not be met when an employee's representative action against an employer is seeking civil penalties under [PAGA]." *Arias v. Superior Ct.*, 46 Cal.4th 969, 975 (2009).  PAGA settlements must be considered in the context of "the overall settlement of the case" and need not allocate any portion of the recovery to PAGA penalties to warrant approval.  *Nordstrom Comm'n Cases,* 186 Cal.App.4th 576, 589 (2010).

Here, the $50,000.00 PAGA allocation is approximately .60% of the maximum settlement amount, with 25% of it allocated to 1,718 eligible California Class Members and the rest to the LWDA.  (Fisher Decl. ¶ 8.)  This is reasonable as compared to the allocation ratios approved for other class actions with PAGA claims.  *See, e.g.*, *Boyd v. Bank of Am. Corp.*, 2014 WL 6473804, at *8 (C.D. Cal. Nov. 18, 2014) (approving PAGA penalties of 0.32% of gross settlement); *Viceral v. Mistras Grp., Inc.*, 2017 WL 661352, at *1, *3 (N.D. Cal. Feb. 17, 2017) (approving PAGA penalties of 0.33% of gross settlement); *Cruz v. Sky Chefs, Inc.*, 2014 WL 7247065, at *3 (N.D. Cal. Dec. 19, 2014) (0.57%).

**III.    NOTICE TO CLASS MEMBERS**

Rule 23(e) instructs the court to "direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  For a class certified under

17

Rule 23(b)(3), the notice must contain, in plain and clear language:  (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) the right of a class member to appear through an attorney, if desired; (5) the right to be excluded from the settlement; (6) the time and manner for requesting an exclusion; and (7) the binding effect of a class judgment on members of the class.  *Castro*, 2020 WL 1984240, at *18; Fed. R. Civ. P. 23(c)(2)(B).  "A class action settlement notice 'is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigation and to come forward and be heard.'"  *Castro*, 2020 WL 1984240, at *18 (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).  Additionally, under relevant FLSA case law, the notice must be timely, accurate, and informative.  *Id.*; *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989).

The Notices meet the requirements of Rule 23(e)(1) and the FLSA as they are "reasonable," "accurate," and "informative," and will be "timely" provided.  Specifically, the Notices:  (1) inform Class Members of the case and settlement; (2) state the total settlement amount and their individualized settlement allocation; (3) explain how to participate and the right to object or request exclusion; (4) provide contact information for Counsel and the Administrator; (5) disclose where they can obtain more information; and (6) describe the effect of cashing or not cashing the settlement check.  (*See* Class Notice Exhibit to Settlement Agmt. Exs. A and B.)  In addition to distributing the Notices by mail, the Administrator will send information about the Notices by email.  Further, the Notice and opt-in process is appropriate for the FLSA claims, as all that FLSA Collective Members must do is cash their check to opt-in or not cash it if they choose not to join.  *See Castro*, 2020 WL 1984240, at *3 n.3 ("FLSA Members need only cash their FLSA Payment Check to opt-in to the FLSA Settlement."); *Foster v. Advantage Sales & Mktg., LLC*, 2019 WL 6699793, at *7 (N.D. Cal. Dec. 9, 2019) (preliminarily approving settlement where collective members simply had to cash their check to opt-in).

## IV.    THE COURT SHOULD PRELIMINARILY APPROVE THE REQUESTED ATTORNEYS' FEES, COSTS, AND SERVICE PAYMENT.

Plaintiff requests preliminary approval of attorneys' fees of $2,092,250.00 (25% of the maximum settlement amount), litigation costs of up to $16,700.00, and a Plaintiff service award of $3,000.00.

### A.      The Court Should Preliminarily Approve the Requested Attorneys' Fees.

The U.S. Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund . . . is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  The Ninth Circuit's benchmark for fees in this context is 25 percent of the gross settlement amount.  *Glass*, 2007 WL 221862, at *14.  However, the choice of "the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case."  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).

In the Ninth Circuit, the typical range of attorneys' fee awards from a common fund is 20% to 33.3% percent, with 25% considered the benchmark.  *Barbosa*, 297 F.R.D. at 448; *see Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).  While 25% is considered the benchmark, "in most common fund cases, the award exceeds that benchmark."  *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009).  California courts routinely approve fee awards in common fund cases at or above 30%.  *Barbosa*, 297 F.R.D. at 450 (approving fee award of 33% and collecting cases approving fee awards of 30% to 33.3%).

Plaintiff will provide further briefing on the request for attorneys' fees in a separate motion.  *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010).  Here, Class Counsel seeks attorneys' fees at the benchmark of 25%[6] and Defendant does not oppose the request.  *See Six Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir.1990).  Given that Class Counsel seeks the benchmark, Plaintiff respectfully requests that the Court defer a detailed attorneys' fee analysis for the motion for attorneys' fees that will follow.  This is appropriate since the factors considered in assessing whether the fee award is fair and reasonable could depend on any Class Member objections after receiving the Notice.  Regardless, a summary of this analysis to facilitate approval is provided below.

---

[6] The amount sought is even less than 25% if considering that Defendant directly, and separately from this settlement, paid an additional $476,868.18 to employees for alleged miscalculated commissions overtime asserted in the Complaint.  (Fisher Decl. ¶ 12.)

19

### 1. The Percentage of the Benefit Method is Warranted.

The overwhelming majority of federal and state courts hold that when class action litigation establishes a monetary fund for the benefit of the class members, the court may determine the amount of a reasonable fee based on an appropriate percentage of the fund created. *See Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 503 (2016).  In group litigation, many class members benefit from the ultimate settlement, but they may not have played a large role in the litigation that led to the payment. *Boeing Co.,* 444 U.S. at 478.  The common fund approach "thus spread[s] fees proportionately among those benefited by the suit." *Id.* Awarding a percentage of the total fund is routinely approved as a fair way to calculate a reasonable fee when contingency-fee litigation has produced a common fund. *See, e.g., Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Vizcaino*, 290 F.3d at 1050.

Courts have discretion to conduct a lodestar cross-check on a percentage fee, but also retain discretion to forego it and use other means to evaluate reasonableness. *Laffitte*, 1 Cal. 5th at 506; *see also Lealao v. Beneficial Cal., Inc.*, 82 Cal.App.4th 19, 30 (2000).  A lodestar cross-check is not required, and in some cases is not useful. *See Glass*, 2007 WL 221862, at *16.

### 2. The Percentage Requested is Fair and Reasonable.

While the Ninth Circuit endorsed a benchmark of 25%, *Powers*, 229 F.3d at 1256, the actual percentage of fees awarded varies depending on the facts of each case, and common fund cases often make an award that exceeds the 25% benchmark. *Knight*, 2009 WL 248367 at *5, 7.  In assessing whether the percentage requested is fair and reasonable, courts generally consider the following factors: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work performed; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) the awards made in similar cases. *Id.* at *5–6; *Barbosa*, 297 F.R.D. at 449.  The reaction of the class may also be a factor in determining the fee award. *Knight*, 2009 WL 248367, at *7.[7]  Here, these factors support an award of fees at the 25% benchmark.

---

[7] Plaintiff already agreed to the fairness of the settlement and the Court can assess the reaction of the class at final approval once Notice has been sent.

20

### i.      The Result Achieved and Similar Awards

The result obtained for the class is a significant factor to be considered in making a fee award.  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("the most critical factor is the degree of success obtained").  Even a limited comparison to other actions for unpaid overtime highlights the success achieved here.  *See Deaver*, 2015 WL 8526982, at *7, *11 (approving 33% of the fund in attorneys' fees based on "very favorable" results where the total settlement fund equaled "10.7 percent of the total potential liability exposure, before any deductions for fees, costs, or incentive awards").  Here, the settlement allocates each Class Member at least 61% of their alleged underpaid overtime wages, after deductions for attorneys' fees and costs, a Plaintiff service award, and a small contingency fund for errors and omissions.  This supports approval of the result achieved.

### ii.      Class Counsel's Skill and Quality of Work

This case involved novel and complex issues regarding whether Defendant should have included the value of vested restricted stock units and sign-on bonuses in the overtime rate.  Litigating the restricted stock unit question would have involved a complicated analysis of legislative history and the nature of restricted stock units to distinguish them from other forms of stock that are expressly excludable from the regular rate of pay and would have required Plaintiff to establish that the sign-on bonuses here do not meet the requirements for exclusion.  Plaintiff would be making arguments for inclusion of classes of compensation that have not been analyzed in any case law as far as Class Counsel is aware.  Class Counsel's ability to spot the novel issues, research them, and present their arguments to Defendant and the mediator to secure this settlement, reflect the skill and quality of work that justify the fee award sought.  Class Counsel negotiated a favorable settlement for a large group of workers, without the need for extensive discovery or contested class certification and summary judgment motions.  These facts favor approval.  *See Adoma v. Univ. of Phx., Inc.,* 913 F. Supp. 2d 964, 983 (E.D. Cal. 2012) ("[T]he court believes that an award of 29% of the common fund . . . is appropriate.  It is important that labor and employment attorneys be rewarded for pursuing novel claims (so long as they are meritorious) and for litigating these claims with tenacity, rather than cherry-picking simple cases or settling difficult cases for small amounts.").

### iii.     Risk of Litigation and Contingent Fees

"Courts consistently recognize that the risk of non-payment or reimbursement of expenses is a factor in determining the appropriateness of counsel's fee award." *Bautista v. Harvest Mgmt. Sub LLC*, 2014 WL 12579822, at \*13 (C.D. Cal. July 14, 2014).  The contingent nature of the work performed by Class Counsel and the risk taken in advancing costs also weigh in favor of determining a higher percentage fee.  *See Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 580 (2004) ("A contingent fee must be higher than a fee for the same legal services paid as they are performed.  The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services.").  Class Counsel handled this case on a contingency basis. (Fisher Decl. ¶ 12.)  They have not received any payment for their time, nor have they received reimbursement for litigation costs.  (*Id.*)  Class Counsel undertook the financial risk of unsuccessful litigation against a large corporate Defendant that can afford to litigate the issues for an extended period.  (*Id.*)  This factor favors approval.

### B.     The Court Should Preliminarily Approve the Requested Costs.

Class Counsel requests approval of up to $16,700.00 in costs.  To date, Class Counsel has incurred approximately $14,863.69 in costs and anticipates incurring more for items such as travel and lodging for preliminary and final approval hearings, and additional research and electronic document organization/storage fees.  The costs incurred to date primarily include filing fees, research charges, case advertising,[8] postage, electronic document organization/storage, and mediation.  (*See* Costs Details, Ex. 2.)  The request for costs is reasonable and should be preliminarily approved.  *See In re Xcel Energy, Inc., Secs. Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 994, 999–00 (D. Minn. 2005) (reimbursing "expenses of photocopying, postage, messenger services, document depository, telephone and facsimile charges, filing and witness fees, computer-assisted legal research, expert fees and consultants, and meal, hotel and transportation charges for out-of-town travel").

---

[8] Case advertising was important prior to settlement because the addition of opt-in plaintiffs would support a motion for certification.

1    **C.      The Court Should Preliminarily Approve the Named Plaintiff Service Award.**

2           Plaintiff brought this action so that all those similarly situated could benefit.  He was

3    actively involved and provided key information and assistance.  He took on this responsibility

4    despite the risk of stigma and reputational harm.  *Deaver*, 2015 WL 8526982, at *15 (service award

5    of $7,500 "is particularly appropriate in this wage and hour class action, where Plaintiff undertook

6    a significant 'reputational risk' in bringing this action against her former employer.").  These facts

7    support an incentive award.  If approved, this award does "not significantly reduce the amount of

8    settlement funds available to the rest of the class."  *See Lusby v. GameStop Inc.*, 2015 WL 1501095,

9    at *5 (N.D. Cal. Mar. 31, 2015) (approving $30,000.00 in enhancement awards out of a $750,000.00

10   settlement, or 4% of the total); *see also Nelson*, 2017 WL 733145, at *2–8 (approving $100,000.00

11   in enhancement awards out of $1,800,000.00 settlement, or 5.5%).

12                                    **CONCLUSION**

13          Plaintiff respectfully requests that the Court: (1) certify the class and collective claims for

14   settlement; (2) preliminarily approve the settlement; (3) designate Plaintiff as the class

15   representative and his Counsel as Class Counsel; (4) designate Atticus Administration as the

16   Administrator; (5) authorize the distribution of the Notices; and (5) schedule a final approval

17   hearing.

18

19   Dated: January 17, 2023                        **NICHOLS KASTER, PLLP**

20                                                  By:      *s/Michele R. Fisher*

21                                                  Attorneys for Plaintiff and Putative Class and

22                                                  Collective Action Members

23

24

25

26

27

28

23