Daniel S. Brome, CA State Bar No. 278915
dbrome@nka.com
NICHOLS KASTER, LLP
235 Montgomery St., Suite 810
San Francisco, CA 94104
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

Michele R. Fisher, MN State Bar No. 303069*
fisher@nka.com
NICHOLS KASTER, PLLP
4700 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 218-6170

Charles Scalise, TX State Bar No. 24064521*
charles@rosslawpc.com
ROSS SCALISE LAW GROUP, P.C.
1104 San Antonio Street
Austin, TX 78701
Telephone: (510) 270-2614
Facsimile: (510) 474-5306

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Cody Bowlay-Williams, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Google, LLC,<br><br>Defendant. | **Case No. 4:21-cv-09942-PJH**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT**<br><br>Date:  July 27, 2023<br>Time:  1:30 p.m.<br>Judge:  Phyllis J. Hamilton<br>       Oakland Courthouse, Courtroom 3 |

## NOTICE OF MOTION AND UNOPPOSED MOTION

**PLEASE TAKE NOTICE** that a hearing will be held on Plaintiff's Unopposed Motion for Final Approval of Settlement on Thursday, July 27, 2023 at 1:30 p.m. in Courtroom 3, 3rd Floor, of the above-captioned Court, where Plaintiff will move this Court to grant final approval of the settlement and award attorneys' fees, costs, and a service payment.

The Motion is based on the Notice of Motion and Motion for Final Approval of Settlement and Memorandum of Points and Authorities in support thereof, the Declaration of Michele Fisher, the Declaration of Bryn Bridley, all exhibits submitted with the Motion, oral argument of counsel, the complete files, records, and such additional matters the Court may consider. A Proposed Order is included.

Dated: June 20, 2023                                **NICHOLS KASTER, PLLP**

                                                    By:    *s/ Michele R. Fisher*
                                                    Attorneys for Plaintiffs

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................ 1

BACKGROUND .......................................................................................................................... 1

I.     PRELIMINARY APPROVAL OF SETTLEMENT ........................................................... 1

II.    DISSEMINATION OF NOTICE ....................................................................................... 2

III.   EXCLUSIONS, OBJECTIONS, AND CONSENT TO JOIN FORMS ............................ 5

IV.   ALLOCATIONS .................................................................................................................. 6

V.    ADDITIONAL ATTORNEYS' FEES AND COSTS INCURRED .................................. 6

ARGUMENT ................................................................................................................................ 6

I.     THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT ........... 6

     A. The Settlement is Fair, Adequate, and Reasonable ........................................................ 7

        1. The Strength of Plaintiff's Case Versus the Risk, Expense, Complexity, and Likely Duration of Further Litigation ..................................................................... 8

        2. The Risk of Maintaining Class Action Status Through Trial ................................. 9

        3. The Amount Offered in Settlement ......................................................................... 9

        4. The Extent of Discovery Completed and the State of Proceedings....................... 10

        5. The Experienced Views of Counsel ...................................................................... 11

        6. Presence of a Governmental Participant ............................................................... 11

        7. Views of Class Members ....................................................................................... 11

     B. The FLSA Settlement is a Reasonable Compromise of a Bona Fide Dispute ............. 12

II.    THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES, COSTS, AND SERVICE AWARD ................................................................................................. 12

CONCLUSION ........................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Aguilar v. Wawona Frozen Foods*, 2017 WL 2214936 (E.D. Cal. May 19, 2017) .................. 9, 10

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015) ................................ 7, 11

*Campbell v. City of Los Angeles*, 903 F.3d 1090 (9th Cir. 2018) ..................................................... 9

*Conley v. Sears, Roebuck & Co.*, 222 B.R. 181 (D. Mass. 1998) ................................................. 13

*Covillo v. Specialtys Café*, 2014 WL 954516 (N.D. Cal. Mar. 6, 2014) ....................................... 11

*Craft v. City of San Bernadino*, 624 F. Supp. 2d 1113 (C.D. Cal. 2008) ..................................... 13

*Deluca v. Farmers Ins. Exch.*, 2020 WL 5071700 (N.D. Cal. Aug. 24, 2020) ......................... 9, 10

*Dixon v. Cushman & Wakefield Western, Inc.*, 2021 WL 3861465

    (N.D. Cal. Aug. 30, 2021) ................................................................................................. 9, 10

*Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ................................. 8

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................................................. 7

*In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010) ................. 12

*Jones v. Agilysys, Inc.*, 2014 WL 2090034 (N.D. Cal. May 19, 2014) ........................................ 12

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) ............................ 7, 12

*Ma v. Covidien Holding*, 2014 WL 360196 (C.D. Cal. Jan. 31, 2014) ........................................ 10

*Mitchinson v. Love's Travel Stops & Country Stores, Inc.*, 2017 WL 2289342

    (E.D. Cal. May 25, 2017) .................................................................................................. 9, 11

*Nelson v. Avon Prod., Inc.*, 2017 WL 733145 (N.D. Cal. Feb. 24, 2017) ............................... 10, 11

*New England Carpenters Health Benefits Fund v. First Databank, Inc.*, 2009 WL 2408560

    (D. Mass. Aug. 2, 2009) ......................................................................................................... 13

*Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615 (9th Cir. 1982) ................................. 7

*Otey v. Crowdflower, Inc.*, 2016 WL 304747 (N.D. Cal. Jan. 26, 2016) ....................................... 7

*Roe v. Jose Torres L.D. Latin Club Bar, Inc.*, 2020 WL 5074392

    (N.D. Cal. Aug. 27, 2020) ..................................................................................................... 10

*Steiner v. Am. Broadcasting Co., Inc.*, 248 F. App'x 780 (9th Cir. 2007) .................................. 13

PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT

1 | *Stonehocker v. Kindred Healthcare Operating LLC*, 2021 WL 1643226
2 |    (N.D. Cal. Apr. 27, 2021). ................................................................................................ 11
3 | *Stovall-Gusman v. W.W. Granger, Inc.*, 2015 WL 3776765 (N.D. Cal. June 17, 2015) ............... 10
4 | *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ......................................................... 13

**Statutes**

29 U.S.C. § 201 ................................................................................................................................ 1

29 U.S.C. § 207(e)(8) ....................................................................................................................... 8

29 C.F.R. § 778.200(a)(8) ................................................................................................................ 8

29 C.F.R. § 778.212 ......................................................................................................................... 8

84 Fed. Reg. 68,736 ......................................................................................................................... 8

**Other Authorities**

California state law, Cal. Wage Order No. 4 .................................................................................. 1

Cal. Labor Code § 201 .................................................................................................................... 1

Cal. Labor Code § 202 .................................................................................................................... 1

Cal. Labor Code § 203 .................................................................................................................... 1

Cal. Labor Code § 226 .................................................................................................................... 1

Cal Labor Code § 510 ..................................................................................................................... 1

Cal Labor Code § 1194 ................................................................................................................... 1

Cal. Labor Code § 1198 .................................................................................................................. 1

Cal. Labor Code § 2699, *et seq.* ..................................................................................................... 1

Cal. Bus. & Prof. Code. §§ 17200, *et seq.* ..................................................................................... 1

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Cody Bowlay-Williams ("Plaintiff"), on behalf of himself and all others similarly situated, seeks final approval of an $8,369,000.00 class and collective action settlement reached for 6,517 eligible individuals who worked for Google, LLC ("Defendant"). The settlement resolves a case challenging Defendant's practice of not including the value of vested restricted stock units ("RSUs") and sign-on bonuses when calculating the rate paid for overtime hours worked, allegedly in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. and California state law, Cal. Wage Order No. 4; Cal Labor Code §§ 510, 1194, 1198; Cal. Labor Code § 226; Cal. Labor Code §§ 201–203; Cal. Bus. & Prof. Code. §§ 17200, *et seq*.; and Cal. Labor Code § 2699, *et seq.* ("PAGA").

The Court preliminarily approved the settlement as within the range of reasonableness that ultimately could be granted approval by the Court at a final approval hearing. (Order 1, ECF No. 64.) The settlement administrator, Atticus Administration, LLC ("Atticus") distributed the Court-approved Notices of Settlement. As detailed below, the Notice process was a success. Of the 3,277 CA Class Members, 18 valid requests for exclusion were received; of the 3,240 FLSA Collective Members, 662 returned a valid Consent to Join Form. No one objected to the settlement. Thus, a total of 3,921 individuals will be participating in the settlement ("Settling Plaintiffs.") and will recover approximately 87% of the settlement funds allocated for Class Member distribution.

Plaintiff respectfully moves this Court for an order approving of the settlement as fair, adequate, and reasonable for the Classes; (2) entering judgment granting final approval of the settlement; and (3) granting Plaintiff's motion for attorneys' fees of $2,092,250.00, litigation expenses of $16,700.00, and a service payment of $3,000 to Plaintiff (*see* Pl's. Mot. for Atty Fees, ECF No. 60).

## BACKGROUND

### I. PRELIMINARY APPROVAL OF SETTLEMENT

On January 17, 2023, Plaintiff filed an unopposed motion for preliminary approval of the settlement, and February 23, 2023, the Court held a hearing on it. (ECF Nos. 51, 62.) The parties'

original proposed settlement sought to give FLSA Collective Members the opportunity to join the case to receive payment for their overtime back wages in the settlement by simply cashing their settlement checks. (Pl.'s Mot. for Prelim. App. 6, ECF No. 51.) At the preliminary approval hearing, the Court questioned whether the proposed settlement process comported with the written consent filing requirement of the FLSA. (*See* Min. Entry, ECF No. 62.) To address the Court's concern, the parties revised the Notice process to require that FLSA Collective Members submit a Consent to Join form to the settlement administrator to opt into the Action and participate in the settlement, rather than opting in by cashing a settlement check. (Joint Suppl. To Prelim. App. 2, ECF No. 63.) CA Class Members did not have to submit a Consent to Join form to be included in the settlement.

The Court also asked the parties to revise the proposed Notices to simplify the process for objecting to the settlement, including allowing Class Members to appear at the Court hearing to object to the settlement without providing advance written notice. (*See* Min. Entry, ECF No. 62.) The parties complied with this instruction. (Joint Suppl. to Prelim, App. 3, ECF No. 63.)

On March 13, 2023, the Court granted preliminary approval of the proposed settlement, certified the settlement classes, approved of Notice being distributed to the Classes, and set a final approval hearing for July 27, 2023. (Order, ECF No. 64.)

## II. DISSEMINATION OF NOTICE

On March 21, 2023, Atticus received a data file from Defense Counsel that contained the name, address, social security number – last four digits, email address, indication of Class or Collective Member and the total Settlement allocation of 6,517 persons who were nonexempt employees of Defendant who (a) worked in the United States, but outside of California, between December 22, 2018 through June 5, 2022 ("FLSA Collective") or (b) worked in California between December 22, 2017 through June 5, 2022 ("California Class") (collectively, the "Class Data"). (Bridley Decl. ¶ 4.) On April 17, 2023, Defendant sent Atticus the full Social Security Numbers of Class and Collective Members. (*Id.*) The final Class List contained 3,277 California Class Members and 3,240 FLSA Collective Members. (*Id.* ¶ 5.) Prior to mailing Notice, the Class list was processed through the National Change of Address database maintained by the United States

Postal Service ("USPS"). (*Id.*) This process returns new and updated address information for individuals in the file who have filed change of address cards with the USPS during the past four years. (*Id.*)

On April 6, 2023, Atticus disseminated the *Notice of Proposed Class and Collective Action Settlement and Final Approval Hearing* ("Notice") by e-mail and mail. (*Id.* ¶ 6.) One version of the Notice was for the FLSA Collective Members and the other for the CA Class Members. (*Id.*) Notices were sent via electronic mail to 5,687 individuals, of whom 2,927 were CA Class Members and 2,760 FLSA Collective Members. (*Id.*) The electronic Notices sent to FLSA Collective Members included a direct link to an online Consent to Join form that could be signed and submitted electronically. (*Id.*) Copies of the e-mailed Class and Collective Notices are attached to the Declaration of Bridley as Exhibit A. (*Id.*)

On April 6, 2023, Notice was also sent via U.S. First Class mail to 829 individuals for whom e-mail addresses were not received. (*Id.* ¶ 7.) Of the mailed Notices, 348 were sent to CA Class Members and 481 were to FLSA Collective Members. (*Id.*) The Notices mailed to FLSA Collective Members included a Consent to Join form and a postage-prepaid return envelope. (*Id.*) Copies of the mailed Notices and Consent to Join form are attached to the Declaration of Bridley as Exhibit B.

On April 13, 2023, Atticus learned that Notices were to have been mailed *and* e-mailed to all Class and Collective Members pursuant to the Settlement Agreement. (*Id.* ¶ 8.) On April 17, 2023, 5,687 additional Notices were sent by U.S. First Class Mail to Class and Collective Members for whom mailing addresses were provided but were initially only sent Notice by e-mail. (*Id.*) Of the additional 5,687 Notices mailed, 2,927 were sent to CA Class Members and 2,760 were sent to FLSA Collective Members. (*Id.*) In total, 6,516 Class and Collective Members were sent Notice by mail and 5,687 Class and Collective Members were sent Notice by e-mail. (*Id.* ¶ 9.) Notice was not sent to one Class Member for whom no address or e-mail address was received or located after Atticus conferred with Defense Counsel and performed a skip trace. (*Id.*)

Of the 6,516 Notices mailed, 303 were returned to Atticus as undeliverable. (*Id.* ¶ 10.) Two of the undeliverable pieces included forwarding address information and Notices were promptly

1  remailed to the address corrections provided by the USPS.  (*Id.*)  Address records associated with
2  204 of the remaining undeliverable records were sent to a professional search firm for address
3  tracing where 147 new addresses were obtained.  (*Id.*)  Notices were promptly mailed to the 147
4  trace addresses received.  (*Id.*)  Addresses were not obtained through trace for the other 57
5  undeliverable records sent.  (*Id.*)  Ten of the remailed Notices were returned a second time, and 97
6  were not sent to trace for updates—changes of address were received for 16 FLSA Collective
7  Members via their online Consent Form submissions, 75 were not traced because a change of
8  address was received before the reminder mailing, and 6 because they were received after the
9  exclusion objection and/or Consent to Join deadline.  (*Id.*)

10  Of the 5,687 Notices sent by email, 5,634 were successfully delivered, 4,621 were opened,
11  and 53 were undeliverable.  (*Id.* ¶ 11.)  Thus 5,634 Notices or 99.07% of Class Members and
12  Collective Members for whom email notice was attempted were successfully notified of the
13  Settlement by electronic mail.  (*Id.*)

14  In total, 6,352 or 97.48% of the mailed Notices were successfully sent, and 5,634 or 99.07%
15  of the emailed Notices were successfully delivered.  (*Id.* ¶ 12.)  Thus, 6,499 Class and Collective
16  Members are believed to have received the Notice by at least one of the two dissemination methods
17  used and, 18 Class and/or Collective Members ultimately did not receive Notice.  (*Id.*)

18  On May 4, 2023, Atticus sent a Consent to Join deadline reminder to FLSA Collective
19  Members who had not filed forms as of that date.  (*Id.* ¶ 13.)  The reminder was sent to 2,889 FLSA
20  Collective Members by U.S. First Class mail in the form of a complex post two-panel postcard that
21  included a perforated postage-prepaid tear-off Consent to Join form.  (*Id.*)  A copy of the reminder
22  postcard is attached to the Declaration of Bridley as Exhibit C.  (*Id.*)

23  The reminder messaging was also sent via e-mail to 2,443 FLSA Collective Members for
24  whom e-mail addresses were available and Consent to Join forms had not been received.  (*Id.* ¶ 14.)
25  The emailed reminder included a link to the online form that Collective Members could sign and
26  return electronically using a computer or mobile device.  (*Id.*)  A copy of the emailed reminder is
27  attached to the Declaration of Bridley as Exhibit D.  (*Id.*)

28

### III. EXCLUSIONS, OBJECTIONS, AND CONSENT TO JOIN FORMS

Members of the CA Class who wished to be removed from the Settlement had until June 5, 2023 to postmark a signed letter requesting exclusion ("Exclusion Letter"). (*Id.* ¶ 15; Order 4, ECF No. 64.) Atticus received 19 Exclusion Letters. (Bridley Decl. ¶ 15.) Seventeen of the letters received were timely and valid. (*Id.*) One request was from an FLSA Collective Member who was not required to request exclusion. (*Id.*) Another request was submitted untimely, but the parties agreed to honor the request for exclusion. The employee IDs of the 18 CA Class Members who submitted valid Exclusion Letters are 989618, 950740, 917639, 873624, 813656, 714906, 696486, 696228, 686882, 619767, 614867, 614702, 591838, 326024, 230515, 219752, 107044, and 63694, and redacted copies are attached to the Declaration of Bridley as Exhibit E. (*Id.*)

Neither Atticus, nor Class Counsel, has received any objections to the settlement from any CA Class Members or FLSA Collective Members. (Bridley Decl. ¶ 16; Fisher Decl. ¶ 2.)

FLSA Collective Members who wished to participate in the settlement and receive their settlement share had until June 5, 2023 to postmark and mail or otherwise sign and submit a Consent to Join form. (Bridley Decl. ¶ 17; Order 4, ECF No. 64.) Mailed Notices included a scannable QR code and emailed Notices a direct clickable link, both of which routed users to an online form where FLSA Collective Members could verify or update their contact information, select a preferred method of payment, and sign their Consent to Join form. (Bridley Decl. ¶ 17.)

Atticus received 661 valid and timely Consent to Join forms. (*Id.* ¶ 18.) Atticus received one untimely request from a FLSA Collective Member to submit a late Consent to Join Form, and the parties agreed to honor that request, thus resulting in a total of 662 FLSA Collective Members. (*Id.*; Fisher Decl. ¶ 2.) Atticus received an invalid Consent to Join Form from a FLSA Collective Member that is missing a signature that the parties agreed not to include, as that individual has not responded to Atticus' communication to obtain a signature. (Bridley Decl. ¶ 18.) Of the forms received 61 were returned by mail and 601 were submitted online. (*Id.*) Of the forms completed online, 299 elected an electronic payment method for receipt of their Settlement Shares. (*Id.*) The list of employee IDs of the 662 FLSA Collective Members who submitted a valid Consent to Join Form is attached to the Declaration of Bridley as Exhibit F. (*Id.*)

## IV. ALLOCATIONS

The Net Settlement Amount allocated to the CA Class and FLSA Collective Members totaled $6,217,550.00. (Bridley Decl. ¶ 19; Pl.'s Mem. for Prelim. App. 14, ECF No. 51.) Of the $5,015,176.49 allocated to the California Class, $34,262.48 was allocated to Class Members who requested exclusion from the Class and $4,980,914.01 was allocated to Class Members who remain in the Class. (*Id.*) Of the $1,202,373.51 allocated to FLSA Collective Members, $443,646.01 was allocated to FLSA Collective Members who submitted a Consent to Join Form and $758,727.50 was allocated to FLSA Collective Members who did not submit a Consent to Join Form. (*Id.*) In total, $5,424,560.02 is allocated to Class and Collective Members who have remained in the California Class or joined the FLSA Collective. (*Id.*)[1]

## V. ADDITIONAL ATTORNEYS' FEES AND COSTS INCURRED

On February 16, 2023, when Plaintiff filed the motion for attorneys' fees and costs, and service payment, Class Counsel's fees under the lodestar method were $288,750.00. (Pl's. Mem. for Atty. Fees 13, ECF No. 60.) Today Class Counsel's fees are $329,966.50. (Fisher Decl. ¶ 3; Scalise Decl.¶ 2.) This reflects additional time spent by Class Counsel on matters such as the Notice process, damages allocations, case strategy, and final approval briefing. (Fisher Decl. ¶ 3.) Class Counsel will incur additional time, not accounted for here, preparing for and attending the final settlement approval hearing, and ensuring, if final approval is granted, that settlement funds are distributed appropriately. (*Id.*) Inevitably, there will also be contact from Class Members regarding this case for months, and perhaps years, as people often have questions about, for example, their settlement checks and tax forms. (*Id.*) Plaintiff's litigation costs have increased as well from $15,366.55 to $17,139.75. (Fisher Decl. ¶ 4; Am. Costs Detail, Ex. 1.)

## ARGUMENT

### I. THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

In granting preliminary approval, this Court determined that the settlement was within the

---

[1] Defendant will retain the allocations to putative FLSA Collective Members who did not opt into the settlement; those individuals are not a part of the case or settlement and waive no rights. Defendant will further retain the allocations to California Class Members who validly excluded themselves from the settlement, provided however, that those individuals will still receive their portion of the PAGA Allocation.

6
PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT

range of reasonableness of a settlement that ultimately could be granted approval by the Court at a final approval hearing. (Order 1, ECF No. 64.) In the second stage of Rule 23 settlement evaluation, the court "must reach a final determination as to whether the parties should be allowed to settle the class action pursuant to their agreed upon terms," recognizing that "[j]udicial policy strongly favors settlement of class actions. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 252 (N.D. Cal. 2015). Similarly, FLSA collective action settlements require approval from the Department of Labor or a court. *Otey v. Crowdflower, Inc.*, 2016 WL 304747, at *3 (N.D. Cal. Jan. 26, 2016) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354–55 (11th Cir. 1982)). Provided the settlement constitutes "a fair and reasonable resolution of a bona fide dispute," the "court may 'approve the settlement in order to promote the policy of encouraging settlement of litigation.'" *Id.* (quoting *Lynn's Food Stores*, 679 F.2d at 1354).

The settlement here is fair, adequate, and reasonable. It was reached as a result of arms-length negotiations with an experienced wage and hour mediator, and the settlement provides substantial value to the Class Members. The positive response from Class Members—through no objections—further supports such a finding. Accordingly, this Court should approve the settlement so that Class Members may promptly receive their settlement payments.

**A.  The Settlement is Fair, Adequate, and Reasonable**

The Ninth Circuit's standard of evaluation of the fairness, adequacy, and reasonableness of a settlement asks this Court to balance several factors:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *see Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). As outlined below, these factors support final approval of the settlement.

### 1. *The Strength of Plaintiff's Case Versus the Risk, Expense, Complexity, and Likely Duration of Further Litigation*

Plaintiff contends that Defendant did not include the value of vested restricted stock units and sign-on bonuses in the overtime rate of pay, allegedly in violation of federal and state law. Defendant disputes that it was required to do so. This issue is novel, and adding further complexity is that the issue has not been analyzed in any case law as far as Class Counsel is aware. Moreover, the FLSA and DOL guidance indicate that the value of stock options and certain sign-on bonuses are properly excluded from the overtime rate of pay. *See, e.g.*, 29 U.S.C. § 207(e)(8); 29 C.F.R. § 778.200(a)(8); Regular Rate Under the Fair Labor Standards Act, 84 Fed. Reg. 68,736 at 68750-51; 29 C.F.R. § 778.212. Due to a lack of case law, litigating the restricted stock unit question would have involved a complicated analysis of legislative history and the nature of restricted stock units to distinguish them from other forms of stock that are expressly excludable from the regular rate of pay and would have required Plaintiff to also establish that the sign-on bonuses do not meet the requirements for any exclusion under state or federal law. (*See* Pl.'s Mot. for Prelim. App. 3, 21, ECF No. 51.)

Moreover, even if Plaintiff prevailed, he would have to prove that this alleged error was willful to obtain a third year of FLSA damages and certain state law penalties, and Defendant could potentially avoid FLSA liquidated (double) damages by demonstrating it acted in good faith. Defendant vigorously contested liability and asserted affirmative defenses. The settlement provides that Class Members will receive approximately 61%[2] of their alleged undercalculated overtime pay (FLSA Collective Members under a two-year statutory period and CA Class Members under four years), when a victory was not certain. *See Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (approving settlement for 25% to 35% of damages).

---

[2] The alleged undercalculated overtime pay for FLSA Collective Members in a two-year statutory period and CA Class Members in a four-year statutory period is $10,083,518.00, exclusive of liquidated damages and penalties. (Pl.'s Mot. for Prelim. App. 4, ECF No. 51.) Plaintiff estimates that including a third year of FLSA damages reserved for willful violations, FLSA liquidated (double damages), and additional potential California penalties, increases Defendant's potential exposure to approximately $30,071,629. (*Id.*) However, Defendant contended even if Plaintiff prevailed on the claim for overtime wages, no liquidated damages or penalties could be awarded based on its defenses.

If litigation had proceeded, the parties would have incurred additional costs, including that of discovery and depositions, certification motions, summary judgment and decertification motions, preparing for and attending trial, and handling subsequent appeals. Notably, wage and hour cases are "complex and expensive." *Deluca v. Farmers Ins. Exch.*, 2020 WL 5071700, at *4 (N.D. Cal. Aug. 24, 2020); *see also Aguilar v. Wawona Frozen Foods*, 2017 WL 2214936, at *3 (E.D. Cal. May 19, 2017). There is no quick and easy route to payment for Class Members absent this settlement, and if the settlement is approved, Class Members can recover money now rather than waiting for prolonged litigation to conclude. *See generally Campbell v. City of Los Angeles*, 903 F.3d 1090, 1102, 1120–21 (9th Cir. 2018) (lengthy procedural history). Given the risks inherent in litigation, both on the merits and damages, the Court should approve the settlement. *See Mitchinson v. Love's Travel Stops & Country Stores, Inc.*, 2017 WL 2289342, at *4 (E.D. Cal. May 25, 2017) ("actual recovery through settlement confers substantial benefits on the class that outweigh the potential recovery that could have been obtained through full adjudication of the action.").

### 2. The Risk of Maintaining Class Action Status Through Trial

While the parties agree that this case is appropriate for settlement on a class-wide basis, getting to a final judgment on a class basis is far from certain. Indeed, there is risk of an adverse ruling for the Class Members on summary judgment on the legal issues this case presents. This settlement provides substantial relief to Class Members which could otherwise be unavailable.

### 3. The Amount Offered in Settlement

The settlement of $8,369,000.00 provides substantial value, with Class Members being allocated $6,217,550.00 after the deduction of requested attorneys' fees and costs, PAGA civil penalties, and a named Plaintiff service payment. (*See* Pl.'s Mot. for Prelim. App. 4, 14, ECF No. 51.) As mentioned, Class Member allocations represent approximately 61% of their alleged under-calculated overtime pay for the statutory periods included in the settlement. (*Id.* 4.) The average allocation to Class Members is $954.05, (*id.*), and "is fair and reasonable because it will be done *pro rata* based on damages calculations which were determined based on [Defendant's] payroll records . . . ." *See Deluca*, 2020 WL 5071700, at *4. The settlement is fair and reasonable because it reflects

a very good result compared to possible results in litigation. *See Dixon v. Cushman & Wakefield Western, Inc.*, 2021 WL 3861465, at *14 (N.D. Cal. Aug. 30, 2021) (granting preliminary approval where maximum settlement value represented 8% of the maximum total exposure); *Roe v. Jose Torres L.D. Latin Club Bar, Inc.*, 2020 WL 5074392, at *6 (N.D. Cal. Aug. 27, 2020) (gross settlement representing 7.07% of maximum potential value was a "good value."); *Deluca*, 2020 WL 5071700, at *4 (finding that a gross settlement of 46.6% of estimated total recovery was "a very good result"); *Nelson v. Avon Prod., Inc.*, 2017 WL 733145, at *4-6 (N.D. Cal. Feb. 24, 2017) (finding that gross settlement of 12 to 24% of the alleged overtime damages was "a substantial benefit for the Class"); *Aguilar v. Wawona Frozen Foods*, 2017 WL 2214936, at *5 (E.D. Cal. May 19, 2017) (finding recovery between 47% and 75% of the possible recovery was a very favorable result, "far greater" than other wage and hour cases); *Stovall-Gusman v. W.W. Granger, Inc.*, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (approving settlement worth 7.3 percent of what plaintiffs estimated could be awarded); *Ma v. Covidien Holding*, 2014 WL 360196, at *5 (C.D. Cal. Jan. 31, 2014) (settlement for "9.1% of the total value of the action [was] 'within the range of reasonableness.'").

### 4.     *The Extent of Discovery Completed and the Stage of Proceedings*

After Plaintiff served Defendant with discovery requests and a deposition notice, the parties attended mediation. (Pl.'s' Mot. for Prelim. App. 2–3, ECF No. 51.)   At mediation, Plaintiff had the information needed to calculate potential damages and assess liability.  For example, Defendant produced data for all Class Members reflecting information such as: dates of employment; hours worked; compensation paid; the issuance, vesting, and value of restricted stock units; and sign-on bonuses.  (*Id.* 3.)  Defendant also produced information about its restricted stock option program. (*Id.*)  Class Counsel used that data to calculate alleged damages.  (*Id.*)  Class Counsel also researched the novel issues that restricted stock options and sign-on bonuses present and provided the mediator with a lengthy memorandum of legislative history and a detailed legal analysis of their position, which they were prepared to use for a summary judgment filing.  (*Id.* ¶ 4.)  Thus, while this matter settled early, the parties cooperated to ensure they had the discovery and information needed to analyze and research the claims and potential damages and reach a reasonable resolution.  Indeed,

Class Counsel negotiated a favorable settlement for a large group of workers, without the need for extensive discovery or contested class certification and summary judgment motions.

### 5.   *The Experienced Views of Counsel*

Class Counsel has extensive experience in class and collective wage and hour litigation. (Pl.'s Mot. for Atty. Fees 8–10, ECF No. 60.)  They identified a novel and complex issue that has not before been litigated.  They researched it extensively and were able to secure a substantial monetary settlement for the class with the assistance of an experienced mediator.  Class Counsel's opinion of the fairness of the settlement, considering their experience, favors final approval. *Nelson*, 2017 WL 733145 at *4; *Bellinghausen*, 306 F.R.D. at 257.

### 6.   *Presence of a Governmental Participant*

There is no governmental participant in this case, rendering this factor neutral. *Nelson*, 2017 WL 733145, at *5; *Mitchinson*, 2017 WL 2289342, at *6.

### 7.   *Views of Class Members*

The reaction of the class supports approval.  The settlement provided benefits to 6,517 Class Members, gave CA Class Members the option to opt-out by submitting a request for exclusion, and allowed FLSA Collective Members to join by filing a Consent to Join form.  Eighteen of the 3,277 CA Class Members requested exclusion.  662 FLSA Collective Members submitted a Consent to Join form.  Thus, 3,921 ((3,277-18) + 662)) Settling Class Members will receive a settlement check upon Court-approval of the settlement, which results in a payout of approximately 87% of the settlement allocations.  *See* Section VI, Allocations, *supra* ($5,424,560.02/$6,217,550.00).  This rate of participation and fund distribution supports approval. *See generally Stonehocker v. Kindred Healthcare Operating LLC*, 2021 WL 1643226, at *8 (N.D. Cal. Apr. 27, 2021).

Further, the parties took steps to ensure that Class Members received notice, by performing skip traces and sending Notice via mail, email, reminder postcard, and reminder email. Taking these steps supports granting approval. *Mitchinson*, 2017 WL 2289342, at *6.

The rate of participation and the lack of objection weighs heavily in favor of final approval. *Id.*; *Covillo v. Specialtys Café*, 2014 WL 954516, at *6 (N.D. Cal. Mar. 6, 2014) (38% participation "strongly favors approval").

**B.      The FLSA Settlement is a Reasonable Compromise of a Bona Fide Dispute**

Settlement of FLSA claims for wages are subject to court approval. *Lynn's Food Stores*, 679 F.2d at 1353. Court approval is favored "to promote the policy of encouraging settlement of litigation," where the settlement reflects a "reasonable compromise over issues" that are "actually in dispute." *Id.* at 1354. Here, the settlement is a compromise over various liability and damages issues, so approval is warranted.

As described above and in Plaintiff's preliminary approval motion (ECF No. 51), there are several issues in dispute: applicability of FLSA exceptions to the regular rate, statute of limitations, willfulness, and whether a good faith defense to liquidated damages applies. The settlement reflects a "reasonable compromise" on these issues, in that the class will receive 61% of the realistic value of their claims. *See Jones v. Agilysys, Inc.*, 2014 WL 2090034, at *2 (N.D. Cal. May 19, 2014) (settlement that "constitutes between 30% to 60% of recoverable damages" supports approval). Accordingly, the settlement satisfies the *Lynn's Food* standard, which is less rigorous than the Rule 23 approval standard, and the Court should approve the settlement of the FLSA claims.

## II.     THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES, COSTS, AND SERVICE AWARD

Plaintiff filed a separate motion for attorneys' fees, costs, and service award (ECF No. 60) before the end of the notice period. *See In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010). As explained there, Class Counsel respectfully seeks attorneys' fees from the common fund at the benchmark amount of 25% ($2,092,250.00) and $16,700.00 in costs. In addition to the factors set out in that motion (the results obtained, the quality of counsel and the work performed, the complexity of the issues, the risk of nonpayment in contingent litigation, and a lodestar cross-check), Plaintiff notes that Class Member response to the notice of settlement, and lack of objection, supports granting the requested fees and costs.

Furthermore, since the filing of that motion, Class Counsel's time spent on the case increased from $288,750.00 to $353,201.50, making the lodestar multiplier now 5.9. The lodestar multiplier will fall further as Class Counsel incurs additional time on, among other things, preparing for and attending the final approval hearing, ensuring settlement funds are distributed by Atticus

appropriately, and handling communications from Class Members. The fee request continues to be a fair multiplier for the lodestar cross-check considering the risk and complexity of litigating this novel case against a large corporate defendant and the amount recovered for the class despite the uncertainty of winning. *See Craft v. City of San Bernadino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (approving a multiplier of 5.2 and collecting cases); *Steiner v. Am. Broadcasting Co., Inc.*, 248 F. App'x 780, 783 (9th Cir. 2007) (approving multiplier of 6.85 and noting cases with comparable or higher multipliers); *see also New England Carpenters Health Benefits Fund v. First Databank, Inc.*, 2009 WL 2408560, at *2 (D. Mass. Aug. 2, 2009) (8.3 multiplier); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052–54 (9th Cir. 2002) (listing settlements where multiplier ranged up to 19.6 times); *Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 182 (D. Mass. 1998) (multiplier of 8.9). Awarding a multiplier in a common fund case like this one, rewards attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases. *Vizcaino*, 290 F.3d at 1051. Importantly, "attorneys whose compensation depends on their winning the case[] must make up in compensation in the cases they win for the lack of compensation in the cases they lose." *Id.* (citations omitted).

In addition, as mentioned, Plaintiff's litigation costs increased as well from $15,366.55 to $17,139.75. (Am. Costs Detail, Ex. 1.) Plaintiff, however, only seeks an award of the $16,700.00 provided for in the settlement agreement.

Finally, both the preliminary approval motion and the attorneys' fee motion addressed the reasonableness of awarding a service award to Plaintiff. (ECF No. 51 at 23; ECF No. 60 at 19–20.) In addition to the reasons set out previously for this modest award (for instance, that Plaintiff has been actively involved, contributed in important ways, and has taken on reputational risk on behalf of the class), the reaction of the class supports granting approval. The Notice informed Class Members that the settlement provides for a service award of $3,000.00 to Plaintiff. No one objected to it. The reaction of the class supports approval of the requested attorneys' fees and costs and Plaintiff service award.

## **CONCLUSION**

Based on the foregoing, the Court should enter an order approving of the settlement as fair, adequate, and reasonable, awarding $2,092,250.00 in attorneys' fees, awarding $16,700.00 in litigation costs, and approving of a named Plaintiff service payment to Bowlay-Williams of $3,000.00.

Dated: June 20, 2023                                **NICHOLS KASTER, PLLP**

By:   *s/Michele R. Fisher*
Attorneys for Plaintiffs